Argued and submitted September 15, decision of Court of Appeals and judgment
of circuit court affirmed December 10, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROY LEE McCULLOUGH, JR.,
aka Roy Lee McCullough, Sr.,
*Petitioner on Review.*

(CC 060834514; CA A134505; SC S056910)

220 P3d 1182

Kenneth A. Kreuscher, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

BALMER, J.

,

**BALMER, J.**

This case involves the construction of the statute that defines the crime of hindering prosecution. That statute, ORS 162.325(1), which we set out in full below, makes it illegal to engage in certain acts intended "to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony." The question is whether ORS 162.325(1) can be applied to a father (defendant) who provided money and an airline ticket to his son (youth) so that youth could flee to the Philippines. Youth had been on probation after he had been found within the jurisdiction of the juvenile court for committing third-degree assault. In anticipation of the possible revocation of youth's probation for unacceptable behavior in his treatment program, defendant sought to assist youth in fleeing the state to avoid assignment to a juvenile correctional facility. A jury subsequently convicted defendant of hindering prosecution. Defendant appealed, and the Court of Appeals affirmed without opinion. *State v. McCullough*, 224 Or App 177, 197 P3d 1151 (2008). We allowed defendant's petition for review and now conclude that ORS 162.325(1) applies when an individual interferes with the apprehension of a juvenile who has been found within the jurisdiction of the juvenile court for engaging in conduct punishable as a felony.

The facts are undisputed. As previously noted, defendant is youth's father. Youth was found to be within the jurisdiction of the juvenile court for engaging in conduct constituting assault in the third degree, ORS 163.165, a Class C felony. He was given probation and placed in a treatment program. Later, youth violated his conditions of probation when he was discharged from the treatment program for behavioral problems. In response, youth's juvenile probation officer scheduled a meeting with defendant and youth to discuss the possibility of placing youth in a juvenile correctional facility. To avoid the possibility that his son might be sent to such a facility, defendant formulated a plan to send him to the Philippines to live with defendant's wife (youth's stepmother). Accordingly, defendant made an airline reservation for youth and assisted youth in obtaining an expedited passport. Defendant also gave youth traveling money and drove him to the airport. The probation officer, suspecting that

defendant might assist youth in fleeing the jurisdiction, had notified Port of Portland police. The probation officer also sought and obtained a felony arrest warrant for youth. Police later took defendant and youth into custody at the airport when youth attempted to check in for his flight.

Defendant was charged with hindering prosecution under ORS 162.325(1), and the case was tried to a jury. At the close of the state's evidence, defendant moved for a judgment of acquittal, arguing that ORS 162.325(1) does not proscribe assisting a juvenile offender in attempting to evade juvenile court proceedings. In the alternative, defendant argued that ORS 162.325(1) applies only to efforts to hinder felony *prosecutions* but does not apply to the hindrance of subsequent probation-violation proceedings. The trial court denied the motion, and the jury convicted defendant of violating ORS 162.325(1). As noted, the Court of Appeals affirmed without opinion. Defendant then filed a petition for review, which we allowed.

ORS 162.325(1) provides:

"A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:

"(a) Harbors or conceals such person; or

"(b) Warns such person of impending discovery or apprehension; or

"(c) Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or

"(d) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or

"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or

"(f) Aids such person in securing or protecting the pro-
ceeds of the crime."

It is undisputed that youth engaged in conduct described in
ORS 163.165[1] as third-degree assault—a felony—and that,
as a result of that conduct, he was found to be within the
jurisdiction of the juvenile court. It also is undisputed that
defendant provided youth with money and transportation as
part of a plan to help youth flee the jurisdiction and avoid
possible incarceration in a juvenile correction facility as a
penalty for his probation violation. The only question is a
legal one, specifically, the meaning of the first paragraph of
ORS 162.325(1) and its application to the facts of this case.

It is helpful to review briefly the historical back-
ground of the crime of hindering prosecution. At common
law, the analogous crime was known as accessory after the
fact. Accessories after the fact, like accessories before the
fact, were punished according to the liability of the principal.
4 William Blackstone, *Commentaries on the Laws of England*
39 (1769). An accessory after the fact had to know of the com-
mission of the felony. *Id.* at 37. The accessory could be liable
for providing even minimal assistance to the felon. *See id.* at
37-38 ("[A]ny assistance whatever given to a felon, to hinder
his being apprehended, tried, or suffering punishment,
makes the assistor an accessory."). Also, one could not be an
accessory to a misdemeanor, only to a felony. *Id.* at 37.

Oregon's early criminal statutes largely followed the
common law, and the standard for liability was substantially
the same as at common law: "All persons who, after the com-
mission of any felony, conceal or aid the offender, with knowl-
edge that he has committed a felony, and with intent that he
may avoid or escape from arrest, trial, conviction or punish-
ment, are accessories." General Laws of Oregon, Crim Code,
ch LIII, § 692, p 573-74 (Deady 1845-1864). As was the case
at common law, one who assisted a person who had commit-
ted a misdemeanor could not be punished as an accessory.

---

[1] ORS 163.165(1) provides, in part:

 "A person commits the crime of assault in the third degree if the person:

 "(a) Recklessly causes serious physical injury to another by means of a
deadly or dangerous weapon[.]"

*Id.* § 693, p 574. However, an accessory after the fact could be indicted, tried, and punished, whether or not the principal was indicted or tried. *Id.* at ch VIII, § 91, p 456-57. Oregon further departed from the common law by providing a specific range of penalties rather than tying the accessory's punishment to the principal's punishment. *Id.* at ch LIII, § 694, p 574. On the eve of the 1971 revision of Oregon's criminal law, those principles had changed little. *See former* ORS 161.230 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (defining accessory); *former* ORS 161.240 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (describing punishment); *former* ORS 161.250 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (accessory punishable even if principal not tried).[2]

ORS 162.325 was adopted as part of the 1971 revision of Oregon's criminal code and has not been amended since. *See* Or Laws 1971, ch 743, § 207 (adopting statute). The 1971 statute changed the description of the crime of assisting a person who has committed a felony from its previous focus on a principal/accessory relationship to the more general concept of hindering the prosecution of another person. The revision replaced the requirement that assistance occur "after the commission of any felony" with the requirement that the person assisted be one "who has committed a crime punishable as a felony." And it changed the requirement that the accessory have actual knowledge of the felony, instead requiring proof of the aider's "intent to hinder" certain aspects of the law enforcement process. Finally, the object of the aider's intent was changed from helping the offender to "avoid or escape from arrest, trial, conviction or punishment" to "hinder[ing] the apprehension, prosecution, conviction or punishment" of the offender.[3]

---

[2] The changes from early statehood were merely stylistic. *Compare* General Laws of Oregon, Crim Code, ch LIII, § 692, p 573-74 (Deady 1845-1864) ("All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment, are accessories."), *with former* ORS 161.230 (1969) ("All persons are accessories who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment.").

[3] The commentary to the 1971 criminal code revision characterizes the intent element of what became ORS 162.325 in general terms as "intent to hinder law enforcement." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 207, 205 (July 1970).

■■ Having sketched some of the history of the elements of the crime of hindering prosecution, we turn to defendant's first argument—that ORS 162.325(1) does not apply to acts undertaken to hinder juvenile proceedings, but applies only to acts undertaken to hinder criminal proceedings. If the legislature had intended ORS 162.325(1) to apply to juvenile proceedings, defendant asserts, it easily could have identified juvenile proceedings by use of an alternative phrase or wording. Defendant argues that,

> "if the legislature had wanted to capture the hindrance of non-criminal juvenile matters, it would have used the phrase 'official proceeding' (as it did in other contextual statutes) or by writing [some reference to] juvenile proceedings into the law (as it did in other governmental administration offenses and as other states have done in their hindering prosecution statutes)."

In addition, defendant argues that youth was not a "person who has committed a crime," ORS 162.325(1), because the law did not authorize a "sentence" of imprisonment for youth's conduct, precisely because he was a youth. *See* ORS 419C.411 (juvenile adjudications authorize dispositions rather than sentences). Finally, defendant argues that the terms that the legislature used in describing the required intent—or, at least the terms "prosecution," "conviction," and "punishment"—describe events that take place in criminal proceedings but not juvenile proceedings. Thus, he argues, the legislature demonstrated its intent that the statute apply only to the hindrance of criminal proceedings.

We begin by examining the wording of the hindering prosecution statute. As noted, ORS 162.325(1) provides that "[a] person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony," the person engages in certain conduct. That key sentence first announces the subject matter of the provision, and then states that the actor must possess the intent to hinder particular actions that represent governmental interests in criminal law enforcement, namely, "the apprehension, prosecution, conviction or punishment of a person."

■ Next, ORS 162.325(1) refers to "a person who has committed a crime punishable as a felony." It appears that with those words, the legislature intended to adopt the common-law principle discussed above, which limits criminal liability to situations where the actor assists someone who has committed a crime more serious than a misdemeanor. Significantly, the legislature did not use the past participle "punished," which would have suggested a requirement that the person whom the actor is aiding engage in conduct and subsequently be subjected to felony punishment for that conduct. The legislature's use of the term "punishable" instead makes it clear that actual prosecution or conviction is not an element of the crime. Indeed, a separate statute provides, "It is no defense to a prosecution for hindering prosecution * * * that the principal offender is not apprehended, prosecuted, convicted or punished." ORS 162.345. Hindering prosecution is unlawful if the crime is punish*able*—*i.e.*, capable of being punished—as a felony.

■■ Moreover, ORS 162.325(1) focuses not on whether the *person* who committed the crime will be or has been punished for a felony, but on whether the *crime* is "punishable as a felony." ORS 161.515(1), in turn, provides, "A crime is an *offense* for which a sentence of imprisonment is authorized." (Emphasis added.) ORS 161.505 defines the term "offense" as "*conduct* for which a sentence to a term of imprisonment or to a fine is provided by any law of this state * * *," (emphasis added), and "conduct" means an act (or omission) accompanied by a mental state. ORS 161.085(4). Accordingly, Oregon statutes define the word "crime" as an act or omission and its accompanying mental state, for which a sentence of imprisonment may be imposed. The legislature's focus on whether the "crime" is punishable as a felony indicates that the relevant inquiry is whether the particular *conduct* is "punishable as a felony," not whether the person who engaged in that conduct is punishable as a felon. That conclusion is buttressed by the statutory definition of the term "felony." Subject to certain exceptions, "a crime is a felony *if it is so designated in any statute of this state* or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year." ORS 161.525 (emphasis added). In other words, if a person engages in conduct that

is classified, by statute, as a felony, that person commits "a crime punishable as a felony," whether or not that person is actually punished for committing a felony.

**6.** The general structure of the criminal code and the juvenile code further support our conclusion that an individual "has committed a crime punishable as a felony" when he or she engages in criminal *conduct* even if that individual cannot be held criminally *responsible*. With rare exception, the criminal code does not distinguish between adults and juveniles in defining crimes.[4] Instead, the criminal code prohibits specific conduct along with an accompanying mental state, regardless of age. *See generally* ORS chapters 161-67 (defining most crimes in terms of conduct by "persons," rather than persons over 18 years of age). When juveniles commit crimes, however, the juvenile code provides for a different *procedure* for addressing that activity and imposing consequences for it.[5]

■ Although juveniles, in certain circumstances, cannot be held criminally responsible for their criminal conduct, nothing in the juvenile code transforms the juvenile's conduct from criminal to noncriminal.[6] Indeed, one means by which a juvenile comes within the jurisdiction of the court is precisely because the juvenile "has committed an act that is a violation" of state law. ORS 419C.005(1). Although ORS 419C.005(1) also grants jurisdiction over juveniles who commit acts "that if done by an adult would constitute a violation" of state law, that provision refers to the few crimes described above where a juvenile cannot actually commit the

---

[4] As noted, there are rare exceptions. *See* ORS 163.165(1)(h) (one method of committing assault in the third degree is when a person 18 years or older intentionally or knowingly causes physical injury to someone 10 years or younger); ORS 163.432 (online sexual corruption of a child requires that the actor be 18 years or older); ORS 163.435 (contributing to the sexual delinquency of a minor requires that the actor be 18 years or older).

[5] In some cases, age may also be a defense to criminal conduct. *See* ORS 163.345 (age as a defense to certain crimes); ORS 161.290 (defense of lack of criminal responsibility for crimes committed when an individual is under 12 years of age).

[6] We emphasize that juvenile adjudications themselves are not the equivalent of criminal proceedings. *See State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 567-74, 857 P2d 560 (1993) (describing history and purpose of juvenile system). Nonetheless, the *conduct* of the juvenile remains criminal regardless of the ultimate adjudication.

crime because age is incorporated as an element. *See* note 4. Thus, ORS 419C.005(1) expressly acknowledges that juveniles can commit not only acts that "would constitute" violations of state criminal law if committed by an adult; they also can commit acts that are violations of state criminal law in and of themselves. In other words, juveniles can engage in conduct constituting a crime, even though they may not be held criminally responsible in certain cases. Similarly, other statutes in the juvenile code acknowledge that, although they are subject to a different system of adjudication, juveniles can commit crimes. *See* ORS 419C.001(1) (one purpose of juvenile justice system is to prevent "further criminal activity" by youths).

■ The function of the felony requirement in ORS 162.325(1), as suggested earlier, is to remove hindrance of the prosecution of lesser crimes (such as misdemeanors) from the scope of the statute. That function does not depend on whether any particular offender is prosecuted, whether the offender is prosecuted for a felony, or what punishment the offender receives. Rather, the emphasis is on the *conduct* of the offender. As noted previously, it is not a defense that the principal offender has not been apprehended, prosecuted, convicted, or punished. ORS 162.345. The offender's conduct is still "punishable as a felony" even if it in fact was not prosecuted or punished as one. We conclude that the phrase "a person who has committed a crime punishable as a felony" focuses on the offender's conduct—and, specifically, the seriousness of the conduct—rather than on whether a particular offender may be held liable for a criminal act. It thus is sufficient here that youth engaged in conduct punishable as a felony, namely third-degree assault, for the state to satisfy the elements of ORS 162.325(1).

As noted, however, defendant's principal argument is based on the legislature's use of the words "apprehension, prosecution, conviction or punishment" in describing the requisite intent. Those terms, defendant argues, describe events in criminal proceedings, not those that occur in juvenile proceedings, and youth was the subject of a juvenile proceeding. The use of those familiar terms of criminal procedure, he contends, demonstrates a legislative intent that ORS 162.325(1) should apply only to hindering criminal proceedings and not

juvenile proceedings. Defendant explains that "youths in the delinquency system are neither 'prosecuted' nor 'convicted.' They instead are 'petitioned' to be in the 'jurisdiction' of the juvenile court and 'adjudicated' as delinquent." Defendant notes that the juvenile code uses the term "prosecution" to describe what happens after a youth's case is transferred to the adult criminal justice system. *See* ORS 419C.349(1) (juvenile court may transfer "a youth to a circuit, justice or municipal court of competent jurisdiction for prosecution as an adult" under specified circumstances); ORS 419C.352 (juvenile court may transfer "a youth under 15 years of age at the time the act was committed to circuit court for prosecution as an adult" under specified circumstances). Further, he notes, the term "punishment" does not describe what happens to juveniles, because they are placed on probation when it is in their "best interest and welfare," ORS 419C.446(1), or they are detained in the custody of the Oregon Youth Authority "for care, placement and supervision," ORS 419C.478.

Even assuming that defendant's argument regarding the terms "prosecution," "conviction," and "punishment," is correct, defendant fails to demonstrate why the term "apprehension" would not include apprehension of a juvenile offender who is seeking to avoid referral to a correctional facility and instead would include the apprehension of only an adult criminal. "Apprehension" refers to "the taking by legal, esp. criminal, process: ARREST." *Webster's Third New Int'l Dictionary* 106 (unabridged ed 2002). Defendant concedes that the term "apprehension," unlike the other terms discussed above, could be understood in isolation to apply to juvenile offenders. He argues, however, that the placement of apprehension in a list of other terms that apply only to adult criminal offenders suggests that the term apprehension should be construed in light of the other terms. ORS 162.325(1) applies only to certain acts performed with the intent to hinder "apprehension, prosecution, conviction or punishment" in a criminal case, according to defendant, but not to acts performed with the intent to hinder a youth's apprehension and referral to a juvenile correctional facility.

Defendant asks us to apply certain maxims of statutory construction that, he argues, support his position—*in*

*pari materia* (statutes on the same subject should be construed together);[7] *noscitur a sociis* (meaning of unclear word may be clarified by other words in context);[8] and *ejusdem generis* (when legislature uses general term and also lists specific examples, general term is interpreted using the other terms in the list).[9] None of those maxims applies here, however. *In pari materia* refers to comparing statutes rather than a list of words in a particular statute; *noscitur a sociis* refers to interpreting an unclear term according to its context, but, as we explain below, the term "apprehension" is not ambiguous; and *ejusdem generis* assists in giving content to a general phrase when the statute also lists specific examples, which is not the issue confronting us.

The central flaw in defendant's argument with respect to the term "apprehension" is that the term is not ambiguous: it simply represents the idea of capture. In the criminal-law context, apprehension involves restraining an individual's liberty so that the state can assert the authority of legal process over that individual. In many cases, that legal process leads to prosecution, conviction, or punishment, but not always. Some offenders are apprehended, but the state elects not to prosecute them. More importantly, some offenders cannot be subjected to criminal liability, even if they have committed a crime punishable as a felony. For example, some offenders are mentally ill and for that reason are guilty except for insanity. *See* ORS 161.295 ("A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person

---

[7] Under the canon that courts should read statutes *in pari materia*, "[s]tatutory provisions on the same subject are construed together." *Griffin v. Tri-Met*, 318 Or 500, 524, 870 P2d 808 (1994).

[8] *Noscitur a sociis* "is an old maxim which summarizes the rule both of language and of law that the meaning of words may be indicated or controlled by those with which they are associated." *Nunner v. Erickson*, 151 Or 575, 609, 51 P2d 839 (1935). The maxim is useful if a particular word is ambiguous. *See Black's Law Dictionary* 1084 (7th ed 1999) ("A canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.").

[9] "When the legislature uses 'nonspecific or general phrases' as well as a list of items, this court, under the principle of *ejusdem generis*, construes the statute 'as referring only to other items of the same kind.'" *Liberty v. State Dept. of Transportation*, 342 Or 11, 20, 148 P3d 909 (2006) (citation omitted).

lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."). Other offenders are juveniles and therefore not subject to prosecution in circuit court in the same manner as adults. *See* ORS 419C.005(1) (juvenile court has exclusive original jurisdiction over most violations of criminal laws committed by minors). An evaluation of the lack of culpability and the need for alternative treatment for certain offenders, however, cannot be undertaken unless and until they are apprehended and examined. Thus, the legislature presumably would not want other persons assisting offenders in evading the justice system, particularly if they have engaged in conduct that is punishable as a felony.

 As noted, defendant argues that the final terms in the sequence should be used to apply a narrow meaning to the initial term. Defendant is incorrect because he is, in effect, inviting us to look through the wrong end of the telescope. He attempts to narrow the otherwise natural meaning of the word "apprehension" by reference to the other terms in the list. Because of the nature of the criminal process, however, each of the first two terms in the sequence "apprehension, prosecution, conviction or punishment" casts a wider net than the terms that follow. Suspects are apprehended; after the exercise of prosecutorial discretion and the identification of juveniles and the mentally ill, fewer will be prosecuted; after prosecution, even fewer will be convicted and punished. (Regarding the terms "conviction" and "punishment," in general, one may assume that those who are convicted will be punished, but even then, exceptions exist.) Hence, the term "apprehension" is broader and more general than the terms that follow it, because it encompasses both persons who are subject to criminal sanction as well as persons who turn out to be, for whatever reason, not subject to criminal prosecution, conviction, or punishment. We therefore reject defendant's argument that the word "apprehension" should be understood in the narrow sense for which he argues.

We now turn to defendant' second argument—that, even if ORS 162.325(1) applies to the hindrance of juvenile proceedings, it does not apply here because defendant hindered youth's apprehension for a probation violation, rather

than for his initial crime. According to defendant, ORS 162.325(1) criminalizes only "specified acts that hinder the *initial* process of catching, trying, convicting, and sentencing a criminal." (Emphasis in original.) His argument is that ORS 162.325(1) does not apply to hindrance of apprehension for a probation violation, because a probation violation and referral to a correctional facility occur later than the temporal sequence of apprehension through punishment set out in the statute. In other words, he contends, youth's "punishment" concluded with the imposition of probation, and when youth allegedly violated his probation, that probation violation occurred after the span of events listed in ORS 162.325(1).

The list of four stages set out in ORS 162.325(1), however, does not indicate a temporal limitation imposing a particular order of events. Of course, the list reflects the ordinary sequence of events in a criminal case. Even though prosecution occurs before conviction, which occurs before punishment, there is nothing in the statute indicating that the legislature understood that apprehension can occur only before prosecution. An attempt to evade the justice system can take place at any time in the process, and the state has an interest in securing the presence of the offender for the purpose of carrying out criminal or juvenile proceedings. Here, youth already had been through some juvenile proceedings regarding his third-degree assault, but it later was necessary to apprehend him. He was about to evade the further process of the juvenile court and circumvent possible referral to a juvenile correctional facility by flying to the Philippines. Indeed, as noted, when youth sought to board the airplane to leave the jurisdiction after violating his conditions of probation, a warrant was outstanding for his arrest. Youth's probation officer had anticipated that youth, with defendant's assistance, might seek to avoid the legal process by fleeing and had obtained an arrest warrant. Defendant's act of assisting youth in fleeing when a warrant had issued for his arrest hindered youth's apprehension in the same manner as if he had hindered youth's initial apprehension. We reject defendant's argument that ORS 162.325(1) does not apply to hindering the apprehension of an offender for a probation violation.

■ We conclude that ORS 162.325(1) applies when an individual aids a juvenile in avoiding apprehension for a probation violation, as long as the juvenile was on probation because he or she engaged in conduct punishable as a felony. The trial court correctly denied defendant's motion for judgment of acquittal.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.