

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L.S., | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD84977 |
| | ) | |
| JUVENILE OFFICER, | ) | FILED: September 6, 2022 |
| Respondent. | ) | |

**Appeal from the Circuit Court of Livingston County**
**The Honorable Richard B. Elliott, Judge**

**Before Division One: Janet Sutton, P.J.,**
**and Alok Ahuja and Karen King Mitchell, JJ.**

P.L.S. is a juvenile born in 2005.  P.L.S. appeals from a judgment of the Circuit Court of Livingston County which committed him to the custody of the Division of Youth Services, based on his admission that he had committed acts of delinquency.   P.L.S. argues that the circuit court plainly erred when it failed to make an adequate record, and failed to make findings, that his admission of delinquency was knowing and voluntary, or that there was an adequate factual basis for his admissions.  P.L.S. also argues that the circuit court could not have found a factual basis for his admission of one of the two offenses alleged by the Juvenile Officer, because it was impossible for him to commit that offense.  Because we find that the circuit court plainly erred in accepting P.L.S.'s admission of an offense he could not have committed, we vacate the circuit court's judgment and remand for further proceedings.

## Factual Background

On April 19, 2021, the Juvenile Officer for Livingston County filed a petition in the circuit court alleging that P.L.S. was absent from school repeatedly without justification and that P.L.S. disobeyed the reasonable and lawful directions of his parents or custodians, and was beyond their control.

P.L.S. admitted the allegations in the April 2021 petition. On May 5, 2021, at the conclusion of a dispositional hearing, the circuit court ordered that P.L.S. be committed to the custody of the Division of Youth Services. The court stayed its commitment order and placed P.L.S. on probation under the supervision of the Juvenile Office. The court ordered that P.L.S. attend school daily and complete assigned school work; perform 50 hours of community service; and attend counseling and therapy. The court memorialized its dispositional order in a judgment entered on May 20, 2021.

The Juvenile Officer filed a motion to modify the circuit court's dispositional order on May 21, 2021, and an amended motion to modify on October 28, 2021. The amended motion alleged that,

> [i]n violation of Section 211.431, RSMo.: [P.L.S.] committed the Class A Misdemeanor of Violation of the Law, if he were an adult, in that on or between May 6, 2021, and May 17, 2021, . . . [P.L.S.] willfully violated, neglected, or refused to obey a lawful order of the Court.

The amended motion also alleged that, between the same dates, P.L.S. committed acts which were injurious to his welfare, in violation of § 211.031.1(2)(d),[1] by failing to attend the full school day at his high school, and by failing to complete assigned school work.

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2020 Cumulative Supplement.

On November 5, 2021, the circuit court held a hearing on the amended motion to modify. At the outset of the hearing, the parties discussed whether P.L.S. was contesting the Juvenile Officer's allegations.

> Juvenile Officer: . . . [I]t's my understanding in speaking to opposing counsel, that with regards to the hearing today they are willing to consent, or admit, to the adjudication portion with regards to the allegations set forth in the amended motion to modify; and then the hearing today will just be with regards to disposition.

> The Court: I see. Is that correct?

> P.L.S.'s counsel: That is correct, sir.

> The Court: All right. We'll proceed on that basis, then.

The court proceeded directly to a dispositional hearing. During the disposition hearing, four witnesses testified regarding P.L.S.'s absences from school; his failure to consistently pay attention in class and complete assigned school work; his diagnoses for Oppositional Defiance Disorder and Attention-Deficit/Hyperactivity Disorder; and the medications he had been prescribed to address those conditions. P.L.S. also made a statement to the court, in which he told the court that he was "taking [his] medication as needed" and had already "see[n] a difference in" himself; that he was working on improving his school attendance and performance; and that he had researched available community service and work opportunities.

At the conclusion of the disposition hearing, the circuit court entered its judgment ordering that P.L.S. be committed to the custody of the Division of Youth Services for placement in a Division facility for an indeterminate period of time. The judgment found, based on P.L.S.'s admissions, that he had "willfully violated, neglected, or refused to obey a lawful order of the court," in violation of § 211.431. The judgment also found that P.L.S. had violated § 211.031.1(2)(d), by engaging in behaviors which were "injurious to his welfare or to the welfare of others," by failing

3

to attend school and complete assigned course work. The circuit court's judgment found that "the necessary care cannot be furnished by placing the juvenile in his own home, but requires the care, custody and discipline of a facility of the Division of Youth Services, because suitable community-based treatment services would not be appropriate in this matter."

P.L.S. appeals.

## Standard of Review

The parties agree that P.L.S. did not preserve his appellate arguments in the circuit court, and that we review solely for plain error. "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c).

> The first step in the plain error process is to determine whether the juvenile court committed a plain error that is evident, obvious and clear. If so, the second step is to determine whether the error resulted in manifest injustice or a miscarriage of justice.

*In re J.L.T.*, 441 S.W.3d 183, 186 (Mo. App. E.D. 2014); *accord, In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 809 (Mo. 2011).[2]

## Discussion

P.L.S. argues that the circuit court committed error that was evident, obvious, and clear when it did not make an adequate record, or make adequate findings, that his admission of the Juvenile Officer's allegations was knowing and voluntary, and that there was a factual basis for P.L.S.'s admissions. P.L.S. also argues that the circuit court could not have found an adequate factual basis for one of the offenses he admitted committing, because he could not meet the age restriction contained in the statutory definition of the offense. Finally, P.L.S.

---

[2] *C.M.B.R.* was overruled on other grounds by *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 816 n.3 (Mo. 2017).

4

argues that these errors resulted in manifest injustice or a miscarriage of justice because he could not have committed the age-restricted offense, and the circuit court considered the age-restricted offense in entering its dispositional order and depriving him of his liberty.

Based on P.L.S.'s admissions, the circuit court found that he was delinquent on two grounds: (1) that he had committed acts which were injurious to his welfare by failing to attend school and/or complete assigned schoolwork, in violation of § 211.031.1(2)(d); and (2) that he had violated § 211.431 by "willfully violat[ing], neglect[ing], or refus[ing] to obey a lawful order of the Court."

The circuit court committed evident, obvious, and clear error in accepting P.L.S.'s admission of a violation of § 211.431 because in order to find that P.L.S. violated the statute, the court had to conclude that there was a factual basis for the violation. *See* Rule 128.02(d)(3) (requiring court to find "whether a basis in fact exists for the juvenile's admissions"). P.L.S. could not have violated § 211.431, however, because he did not meet the age requirement explicitly included as an element of that misdemeanor offense. Section 211.431 provides that "*[a]ny person eighteen years of age or over* who willfully violates, neglects or refuses to obey or perform any lawful order of the court, or who violates any provision of this chapter is guilty of a class A misdemeanor." (Emphasis added.) P.L.S. was sixteen years old at the time of his alleged actions.

Chapter 211 gives juvenile courts exclusive authority over claims that juveniles have violated the criminal law. Section 211.031.1(3) provides:

> 1.     Except as otherwise provided in this chapter, the juvenile court or the family court in circuits that have a family court as provided in sections 487.010 to 487.190 shall have exclusive original jurisdiction[3] in proceedings:

---

[3]     Section 211.031 speaks in terms of the "jurisdiction" of the juvenile court. In light of the Missouri Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275

5

. . . .

> (3)　*Involving any child who is alleged to have violated a state law or municipal ordinance*, or any person who is alleged to have violated a state law or municipal ordinance prior to attaining the age of eighteen years . . . .

(Emphasis added.)

The authority of the juvenile courts under Chapter 211 is limited to the circumstances described in § 211.031.

> Clearly, the exclusive original jurisdiction given the juvenile court by § 211.031 is confined to specifically enumerated situations. "A juvenile court is a legal tribunal limited in its jurisdiction by the statute law which establishes it." While the juvenile code is to be liberally construed to promote the interests of infants, § 211.011, RSMo 1986, such liberal construction cannot be utilized to give the juvenile court jurisdiction and powers not conferred upon it by statute.

*B.L.W. by Ellen K. v. Wollweber*, 823 S.W.2d 119, 121-22 (Mo. App. S.D. 1992) (citations omitted); *accord, State ex rel. Choctaw Nation of Okla. v. Sifferman*, 633 S.W.3d 876, 880-81 (Mo. App. S.D. 2021).

As relevant here, § 211.031.1(3) gives the juvenile court authority in cases in which a juvenile "is alleged to have violated a state law or municipal ordinance." In this case, however, P.L.S. could not have violated § 211.431, because that statute only applies to violations of juvenile court orders by "[a]ny person eighteen years of age or over." Because of the age restriction in § 211.431, that statute cannot serve as the basis for a finding of delinquency by a juvenile like P.L.S. As a Florida court observed with respect to a criminal statute containing a similar age restriction, "[f]rom a functional standpoint, such an age requirement for a defendant simply limits an offense to an adult offense and not a crime supporting an adjudication of juvenile delinquency." *Pena v. State*, 829 So. 2d 289, 292 (Fla. App. 2002),

---

S.W.3d 249 (Mo. 2009), "'jurisdiction' in this context should be read 'authority.'" *State ex rel. Choctaw Nation of Okla. v. Sifferman*, 633 S.W.3d 876, 880 n.5 (Mo. App. S.D. 2021).

6

*approved*, 901 So. 2d 781 (Fla. 2005); *see also In re J.P.*, 287 N.E.2d 926, 927 (Ohio C.P. 1972) (statute could not serve as the basis for a delinquency finding where it only proscribed conduct by "person[s] eighteen years of age or over"; "[t]he juvenile in this case, not being of the specific class named in the criminal section, cannot be held responsible as a delinquent by violation of this criminal statute").

Section 211.031.1(3) only gives the juvenile court authority over a juvenile where he or she has actually "violated a state law or municipal ordinance." In other states, juvenile courts are given authority more broadly, where a juvenile commits acts which <u>would</u> constitute a violation of the law *if committed by a hypothetical adult*. For example, Oregon law gives juvenile courts in that state jurisdiction in <u>both</u> circumstances: (1) where a juvenile actually commits a crime, and (2) where the juvenile commits acts which <u>would</u> constitute a crime *if* committed by an adult. The Oregon Supreme Court discussed the difference between these two formulations of the juvenile court's authority in *State v. McCullough*, 220 P.3d 1182 (Or. 2009):

> With rare exception, the criminal code does not distinguish between adults and juveniles in defining crimes. Instead, the criminal code prohibits specific conduct along with an accompanying mental state, regardless of age. When juveniles commit crimes, however, the juvenile code provides for a different procedure for addressing that activity and imposing consequences for it.
>
> . . . [O]ne means by which a juvenile comes within the jurisdiction of the court is precisely because the juvenile "has committed an act that is a violation" of state law. ORS 419C.005(1). Although ORS 419C.005(1) also grants jurisdiction over juveniles who commit acts "that if done by an adult would constitute a violation" of state law, *that provision refers to the few crimes described above where a juvenile cannot actually commit the crime because age is incorporated as an element.* Thus, ORS 419C.005(1) expressly acknowledges that juveniles can commit not only acts that "would constitute" violations of state criminal law if committed by an adult; they also can commit acts that are violations of state criminal law in and of themselves.

7

*Id.* at 1187-88 (emphasis added); *see also State v. Garcia*, 399 P.3d 444, 450 (Or. 2017) ("This court has explained that ORS 419C.005(1) provides the court with jurisdiction when the juvenile either has committed an act that is a violation of state law or when the act would be a crime, but for the juvenile's age."; citing *McCullough*).

Unlike Oregon and other states, the Missouri statute giving the juvenile court exclusive authority over delinquency cases does not refer to acts which *would* constitute a violation of the law *if committed by a hypothetical adult.* Instead, § 211.031.1(3) gives the juvenile court exclusive authority only when a juvenile "is alleged to have violated a state law or municipal ordinance." Unlike Oregon, Missouri did not utilize "hypothetical adult" language when it granted juvenile courts exclusive adjudicatory authority over juvenile delinquency proceedings. Therefore, P.L.S. could only be found to be delinquent if he had himself *actually violated* § 211.431; it was not enough that his actions *would have* constituted a violation if committed by an older person.

We recognize that several provisions in Chapter 211 refer to a juvenile's commission of acts which would constitute various felonies or misdemeanors if committed by adults. These provisions address procedural or remedial issues which arise following the filing of a delinquency petition, and seek to distinguish among delinquency proceedings based on how similar conduct would be classified if prosecuted in a court of general jurisdiction.[4] These other statutory provisions do

---

[4]    *See* § 211.071.1 (authorizing juvenile court to dismiss petition and transfer child to court of general jurisdiction for prosecution as an adult, where child has committed acts which would be considered felonies if committed by adults); § 211.151.3 (authorizing law enforcement to photograph and collect fingerprints from juveniles with or without juvenile court authorization where juveniles have committed acts which would constitute felonies or misdemeanors "if committed by an adult"); § 211.171.7 (authorizing general public to attend hearings concerning juveniles "in cases where the child is accused of conduct which, if committed by an adult, would be considered" certain felonies);

not address the juvenile court's adjudicatory authority over juvenile delinquency matters itself. The court's adjudicatory authority is addressed in § 211.031, which does not give the court authority over a juvenile for commission of acts which are not themselves criminal, but which would constitute a crime if committed by a hypothetical adult.

It is significant that § 211.431 appears in the juvenile code itself, in the midst of numerous provisions which draw explicit distinctions between children and adults. The fact that § 211.431 refers to the violation of a court's orders by "[a]ny person eighteen years of age or over" is not happenstance; instead, it is intended to criminalize the actions of _adults_ who participate in proceedings under Chapter 211, or who are otherwise subject to the chapter's requirements. Section 211.431 does not apply to juveniles who are themselves the subjects of Chapter 211 proceedings. Notably, the immediately preceding section of Chapter 211 draws a distinction between juveniles and adults who fail to comply with sex-offender registration requirements – specifying that _only the adults_ will be subject to prosecution under § 211.431. Section 211.425.4 provides:

> Any juvenile who is required to register pursuant to this section but fails to do so or who provides false information on the registration form is subject to disposition pursuant to this chapter. Any person eighteen years of age or over who commits such violation is guilty of a class A misdemeanor as provided for in section 211.431.

---

§§ 211.181.3(1), .3(9) (restricting placement of child in his or her own home, and authorizing assessments to be payable to court clerk, for juveniles found to have committed acts which would constitute certain felonies or misdemeanors if committed by adults); § 211.211.10(1) (restricting waiver of right to counsel by juvenile "where the petitioner alleges that the child violated any law that, if committed by an adult, would be a felony"); §§ 211.321.1, .2(2) (providing for public access to records of juvenile court proceedings where juvenile has been adjudicated to have committed acts which would constitute certain felonies if committed by an adult); § 211.425.1 (imposing sex-offender registration requirements on juveniles adjudicated delinquent for committing acts which would constitute certain sex-related felonies if committed by adults).

9

This provision contemplates that only adults are subject to § 211.431 – as § 211.431 itself plainly specifies.

The circuit court could not have found a factual basis to establish that P.L.S. had violated § 211.431, and its reliance on his admission of that charge constituted evident, obvious and clear error. We also conclude that the circuit court's finding that P.L.S. had violated § 211.431 resulted in a manifest injustice. The circuit court's finding that P.L.S. had committed a misdemeanor offense "could have significant collateral consequences for [P.L.S.] into his adult life," either through public disclosure of the adjudication (and the attendant consequences of that disclosure), or through the use of the adjudication in future criminal sentencing proceedings. *See Interest of S.B.A.*, 530 S.W.3d 615, 621-22 (Mo. App. E.D. 2017) (holding that an appeal of a delinquency adjudication for a misdemeanor offense was not moot, despite the juvenile court's termination of its jurisdiction over the juvenile). Moreover, the circuit court's decision to order P.L.S.'s commitment to a Division of Youth Services facility rested (at least in part) on P.L.S.'s admission of a § 211.431 violation. Although P.L.S. admitted two separate acts of delinquency alleged in the Juvenile Officer's amended motion to modify, "we cannot be sure that it was not [P.L.S.'s admission to a violation of § 211.431] that tipped the scales" in the circuit court's choice of an appropriate disposition. *J.R.K.*, 643 S.W.3d at 146. P.L.S.'s loss of liberty, based at least in part on a plainly erroneous finding that he had violated § 211.431, constitutes a manifest injustice. *In re J.L.T.*, 441 S.W.3d 183, 188 (Mo. App. E.D. 2014).

We have found a manifest injustice in criminal proceedings presenting similar circumstances. Thus, the Supreme Court has held that "[i]f the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Self*, 155

10

S.W.3d 756, 762-63 (Mo. 2005) (citations and internal quotation marks omitted).[5] Where a defendant pleads guilty, we have held that, "if the facts presented to the plea court do not establish the commission of the offense, the court must reject the guilty plea." *Snow v. State*, 461 S.W.3d 24, 29 (Mo. App. E.D. 2015) (citing *Declue v. State*, 3 S.W.3d 395, 397 (Mo. App. E.D. 1999)). This Court has granted post-conviction relief, requiring that a defendant be permitted to withdraw a guilty plea, where a sufficient factual basis did not exist to establish that the defendant actually committed the crime to which he or she pleaded guilty. *Id.* The same principle applies here, where P.L.S.'s counsel admitted to P.L.S.'s commission of an offense for which no factual basis could exist.

Because the circuit court's finding that P.L.S. had violated § 211.431 constituted an evident, obvious and clear error which resulted in a manifest injustice, we vacate the circuit court's judgment and remand the case to the circuit court for further proceedings consistent with this opinion. On remand, the circuit court must comply with the rules applicable to adjudication and dispositional hearings in addressing the new offenses alleged in the Juvenile Officer's amended motion to modify. *J.R.K.*, 643 S.W.3d at 146 ("To the extent [a motion to modify contained] new offense allegations, new adjudications and dispositions were required."; citing *In the Interest of B.O.*, 595 S.W.3d 506, 511 (Mo. App. W.D. 2020)). Based on our disposition, it is unnecessary to address P.L.S.'s arguments challenging the adequacy of the record and findings concerning the voluntariness of, and factual basis for, his admissions.

---

[5] In *State v. Claycomb*, 470 S.W.3d 358 (Mo. 2015), the Court clarified that "[s]ufficiency of the evidence is reviewed on the merits, not as plain error," whether or not the sufficiency claim was adequately preserved in the circuit court, or adequately briefed on appeal. *Id.* at 362. That does not alter *Self*'s observation that it constitutes a manifest injustice to convict an individual of a crime without sufficient evidence.

## Conclusion

P.L.S. cannot have violated § 211.431 when he was sixteen, because the statute only applies to persons "eighteen years of age or older."  Because the circuit court based its adjudicatory and dispositional orders on P.L.S.'s admission of an offense he did not commit, the circuit court's judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.