340 October 5, 2023 No. 23

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

BRIAN G. HUBBELL,
*Respondent on Review.*

(CC 18CR43198) (CA A170143) (SC S069092)

On review from the Court of Appeals.*

Argued and submitted September 23, 2022.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender.

Zack Duffly, Duffly Law, LLC, Portland, filed the brief for *amicus curiae* Drug Policy Alliance. Also on the brief was Kellen Russoniello, Drug Policy Alliance, San Leandro, California.

Claire Powers, Oregon Justice Resource Center, Portland, filed the brief for *amici curiae* Oregon Justice Resource Center and Oregon Criminal Defense Lawyers Association. Also on the brief were Brittney Plesser, Karen Newirth, and Malori Maloney, Oregon Justice Resource Center, and Rosalind Lee, Oregon Criminal Defense Lawyers Association, Eugene.

––––––––––––––

*Appeal from Washington County Circuit Court, Theodore E. Sims, Judge. 314 Or App 844, 500 P3d 728 (2021).

Before Flynn, Chief Justice, Duncan, Garrett, and Masih, Justices, and Landau and Walters, Senior Judges, Justices pro tempore.**

GARRETT, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

**Balmer, J., retired December 31, 2022, and did not participate in the decision of this case. Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. DeHoog, Bushong, and James, JJ., did not participate in the consideration or decision of this case.

**GARRETT, J.**

In Oregon, it is generally unlawful "to manufacture or deliver a controlled substance." ORS 475.752(1). The legislature has defined "deliver" to mean "the actual, constructive or *attempted* transfer, other than by administering or dispensing, from one person to another of a controlled substance." ORS 475.005(8) (emphasis added). Thus, Oregon law treats the "attempted transfer" of controlled substances as a delivery just the same as if the transfer had been completed. But the legislature did not define "attempted transfer." In this case, we consider whether that phrase applies to a person who possesses a large quantity of a controlled substance and takes steps consistent with an intent to transfer it in the future, but who has not yet made any effort to cause the substance to change possession. We conclude that the answer is no.

The trial court convicted defendant of delivery under ORS 475.752 based on evidence that defendant's extended-stay hotel room contained a large quantity of fentanyl, a portion of which was packaged in a manner consistent with an intent to sell it to individual users or dealers. Over defendant's objection, the trial court ruled that that evidence was sufficient to convict him of delivery under *State v. Boyd*, 92 Or App 51, 756 P2d 1276, *rev den*, 307 Or 77 (1988). In *Boyd*, the Court of Appeals construed the phrase "attempted transfer" in ORS 475.005(8) by applying principles of liability for the inchoate crime of attempt, ORS 161.405(1), whereby a person who intentionally takes a "substantial step" toward committing a crime is liable for attempting the crime. 92 Or App at 53-54. *Boyd* held that possessing a controlled substance in a quantity too large to be consistent with personal use, combined with evidence of an intent to transfer that substance, constitutes a substantial step toward transferring it and hence is sufficient to show an "attempted transfer." *Id.* at 54.

On appeal in this case, defendant argued that the evidence was insufficient to show delivery even under *Boyd*. The Court of Appeals, on its own initiative, undertook a reexamination of *Boyd*, overruled that case, and held that possession plus an intent to deliver, without more, is insufficient

to show an "attempted transfer" for purposes of the *completed* crime of delivery of controlled substances, although it may establish a "substantial step" for purposes of the *inchoate* crime of attempt. *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021). Defendant's conviction was reversed.[1] We allowed the state's petition for review, and now affirm the Court of Appeals.

## I.   BACKGROUND

The trial court found the state's evidence sufficient to prove beyond a reasonable doubt that defendant committed delivery under an "attempted transfer" theory. Defendant did not formally move for a judgment of acquittal (MJOA), but, as this was a bench trial, we treat his closing argument challenging the sufficiency of the state's evidence as the equivalent of an MJOA. *State v. Hedgpeth*, 365 Or 724, 730 n 4, 452 P3d 948 (2019) (explaining that, in closing arguments in a bench trial, an argument that evidence was insufficient was reviewed on appeal as if it were an express motion challenging the sufficiency of the evidence).[2] Thus, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Andrews*, 366 Or 65, 75, 456 P3d 261 (2020) (citing *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989)).

### A.   *Historical Facts*

Tigard police responded to a report that three individuals had overdosed at a hotel. Officers questioned one of those individuals and determined that the cause of the overdoses was a white powder that they had obtained from a room in a different hotel. Upon further investigation, the officers determined that the room was defendant's.

---

[1] The Court of Appeals held that the evidence and the trial court's findings established that defendant had committed the inchoate crime of "attempted delivery" and remanded to the trial court for entry of a conviction and sentencing for that crime. *Hubbell*, 314 Or App at 873. As explained later in this opinion, we agree with that disposition.

[2] The Court of Appeals' opinion states that defendant made a motion for judgment of acquittal. *Hubbell*, 314 Or App at 850. We understand that reference to reflect the functional equivalence described above.

Based on that information, officers obtained a warrant to search defendant's hotel room. Inside a plastic tub, they found a lockbox that, in turn, contained several packages of white powder in plastic baggies. One package contained 23.78 grams of the powder. Another baggie contained .23 grams of the powder, and several other baggies contained exactly .04 grams each. A few additional baggies were empty but had white powder residue on them. Laboratory results later identified the white powder as the synthetic opioid fentanyl, a Schedule II controlled substance.[3]

At the time of the overdose incident and the warranted search, defendant was in jail in Columbia County. When he was later questioned by officers, he admitted that the fentanyl in the lockbox belonged to him.

At trial, the state presented evidence that the total quantity of fentanyl found in defendant's room was sufficient to supply in excess of 300,000 individual doses of the drug. A detective also testified that the amount of fentanyl found in some of the smaller packages found in the lockbox—.04 grams—is typical of what would be sold on the street either to end users or to dealers who would mix it with other drugs. From that evidence, the state argued that defendant had intended to traffic in fentanyl.

B.  *Legal Background*

The state charged defendant with unlawful delivery of controlled substances under ORS 475.752, the delivery statute. We pause to make clear that the prosecution was based on the quantity and packaging of the fentanyl found in defendant's hotel room, not on the evidence that the overdose victims had obtained drugs from that room. Thus, the evidence that controlled substances came into the possession of those victims is not material to the issues on review. The issues we address solely concern whether the fentanyl *in defendant's possession* could support a conviction for delivery.

In reliance on *Boyd*, the state argued at defendant's bench trial that the quantity of fentanyl found in defendant's possession and the evidence that the fentanyl had been

---

[3] Fentanyl is a Schedule II controlled substance under both state and federal law. OAR 855-080-0022; 21 CFR § 1308.12(c)(9).

packaged in preparation for transfer to others were suffi-cient to show that defendant had made an "attempted trans-fer" for purposes of the delivery statute, ORS 475.752(1).[4] Defendant argued that the requirements of *Boyd* had not been met because, notwithstanding the quantity of fentanyl, the evidence was insufficient to show an intent to transfer. Defendant pointed out that there was no evidence of when, or by whom, the fentanyl had been divided into smaller packages, nor was there any other evidence of the type that one would expect to find in proximity to drug distribution, such as scales, transaction records, or related materials. The trial court ruled that the evidence was sufficient for an "attempted transfer" under *Boyd* and convicted defendant of delivery.

On appeal, the parties initially reprised their argu-ments about whether the evidence was sufficient under *Boyd* to show that defendant had intended to transfer the fentanyl. The Court of Appeals then requested supplemental briefing on the validity of *Boyd*'s central holding, *viz.*, that possession with the intent to deliver is sufficient to estab-lish an "attempted transfer." *Hubbell*, 314 Or App at 847-48. Ultimately, that court undertook a reexamination of *Boyd*, held that that case had been wrongly decided, and reversed defendant's conviction for delivery. *Id.* at 867, 873. We thus turn to *Boyd*, and the decision below overturning it, as con-text for the arguments that the parties present to this court on review.

In *Boyd*, the defendant had possessed a large quan-tity of heroin and had admitted that she intended to sell it. 92 Or App at 53. She challenged her conviction for delivery of controlled substances on the ground that the record lacked any evidence that she had sold or attempted to sell the heroin. The Court of Appeals considered for the first time whether

---

[4] The underlying events in this case occurred in 2018. The delivery statute has been renumbered since *Boyd*. *See former* ORS 475.992(1) (1987) and *former* ORS 475.840 (2009), *renumbered as* ORS 475.752(1) (2011). ORS 475.752 was substantively amended in 2021 and 2023. The crime defined in ORS 475.752(1) was not affected by those amendments, and they do not affect our analysis. Two other statutes discussed in detail in this opinion, ORS 475.005 and ORS 161.405, were also amended after 2018. Those amendments do not affect our analysis, and therefore, all references in this opinion to ORS 475.752(1), ORS 475.005, and ORS 161.405 are to the current version of the statute unless stated otherwise.

"possession of [a] large amount of [controlled substances], not for personal use but for sale, constitutes attempted delivery within the meaning of * * * [ORS 475.005(8)], which does not define either attempted transfer or attempt." *Id.* To resolve that question, the court turned to a different statute, ORS 161.405(1), which defines the inchoate crime of "attempt": "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." *Id.* at 53-54. The Court of Appeals thus imported concepts from the distinct statute criminalizing "attempt" crimes—specifically, the concept of a "substantial step"—to construe the phrase "attempted transfer" in the delivery statute. Then, relying on legislative history associated with the attempt statute, the court observed that "'possession of materials to be employed in the commission of the crime,'" and which could serve no lawful purpose of the actor, may constitute a "substantial step" and be sufficient for attempt liability. *Id.* at 54 (quoting the Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 54, 51 (July 1970)). Consequently, the court reasoned, "the fact that defendant possessed the large amount of heroin together with her admission that she acquired it in order to sell it amounts to evidence that she had taken a substantial step toward the commission of the crime of delivery of a controlled substance." *Id.*

After reaching that conclusion, the *Boyd* court took note of the defendant's argument that Oregon, when otherwise adopting the Uniform Controlled Substances Act (UCSA), had *not* enacted the prohibition on "possession with intent to deliver," which is a feature of the UCSA that has been enacted in most other states and by the federal government. *Id.* That is, the UCSA separately criminalizes possession, possession with intent to deliver, and delivery—yet Oregon law penalizes only possession and delivery. The defendant in *Boyd* argued that to allow a conviction for delivery, based only on evidence that a person possessed a controlled substance with the intent to deliver it, would have the effect of creating the crime that the legislature had declined to create. The *Boyd* court rejected that argument:

> "There is no indication that the Oregon legislature intended to punish an attempt to transfer a controlled substance other than as the completed transfer. It did so without enacting the distinct crime of possession with intent to deliver, because that crime, considering the meaning of 'attempt,' is included in the definition of 'delivery[.]'"

*Id.* at 55.

In this case, the Court of Appeals disavowed its earlier decision in *Boyd* as "plainly wrong," *Hubbell*, 314 Or App at 860, and faulted its analysis in several respects. The fundamental flaw in *Boyd*, the court explained, was the "unexamined assumption" that the meaning of "attempted transfer" in the delivery statute is to be found by referring to the entirely separate inchoate crime of "attempt" in ORS 161.405. *Id.* at 856. The *Boyd* court had proceeded straight to that assumption without engaging in any textual or contextual analysis of the phrase "attempted transfer," contrary to established principles of statutory interpretation. *Id.* Moreover, the reason that *Boyd* gave for rejecting the defendant's legislative history argument—the fact that the Oregon legislature had chosen *not* to adopt the UCSA provision criminalizing possession with intent to deliver—was itself dependent on the court's assumption that the attempt statute, ORS 161.405, supplied the meaning of "attempted transfer" for purposes of the delivery statute. *Id.* at 857.

In explaining why *Boyd*'s assumption about the meaning of "attempted transfer" was incorrect, the court below noted that ORS 161.405 is not a definitional statute. *Id.* at 859. Rather, it sets out the substantive elements for the particular, inchoate crime of "attempt"—it does not define that word, much less purport to supply a definition that would apply to any other statute in the Criminal Code. In addition, the court explained, the structure of the Criminal Code consistently reflects the legislative choice to distinguish inchoate crimes from completed crimes, and to punish the former less severely. *Id.* at 860. It would frustrate that policy choice, the court noted, if ORS 161.405 were understood to "provide a generic definition of attempt that would create a 'crime within a crime' in other statutes that use the word 'attempt,' thereby eviscerating the very distinction that the 1971 code intended to create." *Id.*

Having concluded that *Boyd* should be overruled, the Court of Appeals proceeded to construe the phrase "attempted transfer." *Id.* at 864, 868. Consulting dictionary definitions of both "attempted" and "transfer," in the light of other context and the statutory phrase "from one person to another," the court concluded that an "'attempted transfer' appear[s] to describe an unsuccessful effort to cause the controlled substances to pass from one person to another." *Id.* at 868-69. The court further reasoned that the phrase contemplates "a particular act of transferring, not possession with a more generalized intent to deal the drugs at some undetermined point in the future." *Id.* at 870. Thus, where a person possesses a controlled substance with such an intent but has not yet tried to effectuate a transfer, the person cannot be guilty of the completed offense of delivery, although that same conduct may constitute a *substantial step* toward delivery and thus support liability for the inchoate crime of attempt. *Id.* at 870-71.

Returning to the facts of this case, the Court of Appeals concluded that the state's evidence readily supported a finding that defendant had "possessed an exceptionally large amount of fentanyl for the purpose of dealing," and thus had taken a substantial step toward the crime of delivery. *Id.* at 871-72. The evidence did not, however, support a finding that defendant had "made some effort to cause the controlled substances to pass from one person to another." *Id.* at 872. Because no "actual, constructive or attempted transfer" had occurred, the court reversed defendant's conviction for delivery and remanded for entry of a conviction for attempted delivery. *Id.* at 873.

The state petitioned for review, which we allowed.

## II.   ANALYSIS

The legal question on review is whether the evidence is sufficient to permit defendant's conviction for "delivery" under ORS 475.752(1). As we will explain, that evidence, viewed in the light most favorable to the state, permits findings that defendant possessed a very large quantity of a controlled substance, intended to transfer it in the future, and had taken some steps consistent with that objective, such as

keeping it packaged for sale. The question before this court is whether those findings legally suffice to show an "attempted transfer" for purposes of the delivery statute. That is a matter of statutory interpretation, which we resolve by considering the text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin with the text, which is the best evidence of the legislature's intent. *Id.* at 171. The delivery statute makes it unlawful for a person "to manufacture or deliver a controlled substance." ORS 475.752(1). "Deliver" is defined to include "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance." ORS 475.005(8). At issue is the meaning of the phrase "attempted transfer." Because the legislature did not define either "attempted" or "transfer," we presume that the legislature intended those terms to be understood in their ordinary sense. *SAIF v. Ward*, 369 Or 384, 394-95, 506 P3d 386 (2022) ("When interpreting a term or phrase that the legislature has not specifically defined, this court first considers the 'plain, natural, and ordinary' meaning of the term." (Quoting *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016).)).

The dictionary defines "attempt" as both a verb and a noun. The verb "attempt" is defined as follows:

> "to make an effort to do, accomplish, solve, or effect <~ to swim> <~ a problem>—often used in venturous or experimental situations sometimes with implications of failure."

*Webster's Third New Int'l Dictionary* 140 (unabridged ed 2002).[5] We are interpreting "attempted" as used in the statute—an adjective modifying a noun. The adjective is derived from the past participle of the verb "attempt." *See id*. Thus, we find the definition of the verb most pertinent to our analysis: "to make an effort to do, accomplish, solve, or effect." *Id.*

Of the several definitions of "transfer" found in the dictionary, the one relevant for these purposes is "the

---

[5] The dictionary defines the noun "attempt" as "the act of attempting : ESSAY, TRIAL, ENDEAVOR, UNDERTAKING; *esp* : an unsuccessful effort **2** : an effort to achieve something by force." *Webster's* at 140.

conveyance of right, title, or interest in either real or personal property from one person to another by sale, gift, or other process." *Webster's* at 2427. It also means "the act of transferring," and transferring is defined as "to carry or take from one person or place to another," or "to cause to pass from one person or thing to another." *Id.* at 2426-27.

The parties agree, as do we, that the two definitions together indicate that the plain meaning of an "attempted transfer" of controlled substances is an unsuccessful or incomplete effort to accomplish the passing of controlled substances from one person to another. That does little to resolve the dispute, however, because the parties disagree about how broadly to understand the "effort" involved in transferring controlled substances. If one understands the delivery of controlled substances to involve a series of steps, the parties disagree about which steps are relevant to determining whether an "attempted transfer" has occurred.

The state argues that the evidence shows an effort to effectuate a transfer here because defendant took meaningful steps "toward" that end, such as acquiring an extremely large quantity of fentanyl and holding it in divisible quantities suitable for sale. The state reasons that defendant's failure to initiate the "final step" in the transfer process—the change of physical possession from one person to another—does not negate the significance of those earlier steps.

Defendant responds that the focus of the word "transfer" is on the act or acts that cause a thing to be passed from one person to another. And, because "attempted" modifies the word "transfer," defendant argues, an "attempted transfer" connotes that some effort has been made to complete the act or acts that causes possession to change. Viewed that way, defendant argues, an actor has not "attempted" a "transfer" merely by engaging in conduct that is logically connected to, or in furtherance of, the ultimate goal of transferring controlled substances, such as acquiring the controlled substance and even prepackaging it for sale. Rather, a person "must have made an effort to actually relinquish control of the drugs—he must be in the act of doing so."

As a textual matter, both parties' arguments are plausible. The dictionary definitions tell us that an attempted transfer is an effort to bring about a change in possession. But those definitions seem to permit both the state's view—that a person can attempt the transfer by initiating a series of steps that *culminate* in the physical act of transferring—and defendant's narrower view—that attempting a transfer means making an effort to engage in the act itself. As we next explain, however, context and legislative history suggest that defendant's view is more consistent with legislative intent.

We consider the term "attempted transfer" in light of the provision as a whole. First, that term appears in the phrase "the actual, constructive or attempted transfer \* \* \* from one person to another." ORS 475.005(8). "Actual" means "existing in fact or reality." *Webster's* at 22. "Constructive," as relevant here, means "derived from or depending on construction or interpretation : not directly expressed : INFERRED—often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving the act or condition assumed." *Webster's* at 489.[6] Although this case does not call upon us to resolve the meanings of an actual or a constructive transfer of controlled substances, it is evident that both terms contemplate a transfer that *happened* (directly or inferentially), rather than a transfer that is hypothetical or planned. That has some bearing on how expansively we should understand the concept of an "attempted transfer."

An oft-invoked principle of statutory construction is that, when a word appearing in a list or grouping is capable of more than one meaning, the meaning that is more consistent with the other words in the group may better reflect legislative intent. *See, e.g.*, *State v. McCullough*, 347 Or 350, 361 & n 8, 220 P3d 1182 (2009) (so describing *noscitur a*

---

[6] The phrase "constructive transfer" also has a legal meaning: "A delivery of an item—esp. a controlled substance—by someone other than the owner but at the owner's direction." *Black's Law Dictionary* 1803 (11th ed 2019). We express no view as to whether a delivery "by someone other than the owner but at the owner's direction" is a necessary component of a constructive transfer for purposes of ORS 475.005(8).

*sociis*). Given the choice between an expansive understanding of "attempted transfer" that includes steps preliminary to engaging in the act of transferring, versus a more limited understanding that focuses on that act itself, the statute's references to other transfers that were *completed* tends to suggest that the narrower focus is appropriate. That reading is further reinforced by the statutory phrase "from one person to another," as well as by the use of the definite article "the" before the phrase "actual, constructive or attempted transfer." ORS 475.005(8). Those features of the text seem to contemplate a transfer of a controlled substance that is specific and identifiable, as opposed to a course of envisioned or planned activity more generally. *See, e.g.*, *State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015) (explaining that the definite article "the" "indicates something specific, either known to the reader or listener or uniquely specified"); *accord Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 224-25, 377 P3d 570 (2016) (similar).

In short, the full text of ORS 475.005(8) lends some support to the view that an "attempted transfer" of controlled substances refers to an effort to engage in the conduct by which the transfer occurs; it does not consist of activity preliminary to that conduct, even if intended to eventually make such a transfer possible.

The state's contextual argument to the contrary relies, as did *Boyd*, on ORS 161.405, the inchoate attempt statute. The state reasons that, in enacting the delivery statute, the 1977 legislature would have been aware of the attempt statute enacted in 1971, which describes the crime of attempt as intentional conduct that "constitutes a substantial step toward commission of the crime." *See* ORS 161.405(1). The state further argues that, "[w]ith respect to the meaning of 'attempt,' as used in the Oregon statutes that define crimes, the *only* clue that the legislature has provided is ORS 161.405(1)'s definition of 'attempt.' That definition equates 'attempt' with a 'substantial step' toward a particular goal. Nothing in the rest of the Criminal Code, or in [ORS] chapter 475, identifies an alternative definition."

We agree with the state's observation that the meaning of "attempt" is not addressed anywhere in Oregon's

criminal law, other than in the statute defining the *inchoate crime* of attempt. But we draw a different conclusion from that observation. If the legislature had intended that the word "attempt" (or "attempted") would have a particular meaning across the Criminal Code when used to modify conduct, the natural location for the legislature to have provided such a definition would have been one or more of the several places in the Criminal Code that supply general definitions. *E.g.*, ORS 161.015 ("General Definitions"); ORS 161.085 ("Definitions with respect to culpability"); ORS 164.005 ("Definitions" for property offenses). The legislature's failure to do that suggests that it did not intend to define the term; it does not suggest that the legislature meant for ORS 161.405 to perform a function that its text does not support.

ORS 161.405 does not define the word "attempt." Rather, it sets out the circumstances in which "[a] person is guilty of an attempt to commit a crime." ORS 161.405. Under the statute, liability for the inchoate *crime* of attempt is determined, first, by reference to a substantive crime set out elsewhere, and then by whether a person has (1) "intentionally" (2) "engage[d] in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). The phrase "commission of the crime" is necessarily directed at all the elements of the offense. Attempt liability thus requires a substantial step toward committing "the crime," which is not the same thing as a substantial step toward completing a single element of a crime. We are skeptical, therefore, of the state's argument that the attempt statute provides a way of understanding what the legislature meant by using "attempt" or "attempted" in a different criminal statute to modify a single element, such as a physical act.

A further reason to doubt that the legislature intended for "attempted transfer" to derive its meaning from ORS 161.405 is that doing so would treat the inchoate crime of attempt as equivalent to the completed crime of delivery of a controlled substance. That is contrary to the principle set out in ORS 161.405 itself, which states that an attempted crime is one class lower in severity than the

corresponding completed crime. *See* ORS 161.405(2) (stating that an attempt is a Class B felony if the offense attempted is a Class A felony, a Class C felony if the offense attempted is a Class B felony, and so on). The crime of manufacture or delivery of a Schedule II substance, such as fentanyl, is a Class B felony. ORS 475.752(1)(b). The inchoate crimes of attempted manufacture or attempted delivery of the same substance, therefore, are Class C felonies. *See* ORS 161.405(2)(c). Under the state's view, however, conduct that constitutes a "substantial step" toward delivery of a Schedule II substance is punishable not only as a Class C attempt crime under ORS 161.405, but as the Class B completed crime of delivery under ORS 475.752. If the legislature had intended such equivalence, which is contrary to the rule otherwise set out in ORS 161.405(2), one would expect to see stronger evidence of that intent.

Important context for our construction of the delivery statute also includes the fact that the statute is situated within a comprehensive scheme regulating controlled substances. The crime of delivery is part of chapter 475 of the Oregon Revised Statutes, and that chapter is entitled "Uniform Controlled Substances Act" ("Oregon's Controlled Substances Act"). *See* ORS 475.285 (designating the short title as the Uniform Controlled Substances Act). Oregon adopted that chapter in 1977 based on a model act, the UCSA, which has been enacted in whole or in part by many states and the federal government. Or Laws 1977, ch 745; Exhibit 3, Senate Committee on the Judiciary, SB 904, Apr 7, 1977 (fact sheet accompanying statement of Senator Stephen Kafoury).

When the legislature adopts a uniform act, the context of the statute includes the uniform act, its official commentary, and interpretations from other jurisdictions that existed at the time of enactment of the Oregon law. *See Dept. of Human Services v. J. S.*, 368 Or 516, 528, 495 P3d 1245 (2021) ("The context of a uniform act includes its official commentary."); *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) (explaining that case law existing at the time of enactment interpreting the text of a statute borrowed from another jurisdiction "may be consulted" as

context). However, when the Oregon version of a statute contains different wording from the uniform act, we presume that the difference is significant. *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 179, 818 P2d 1270 (1991) ("We generally give meaning to the difference between an Oregon statute and the statute or model code from which it was borrowed.").

ORS 475.752(1), which makes it unlawful "to manufacture or deliver a controlled substance," is derived from section 401 of the UCSA. Section 401(a) of the UCSA states that it is unlawful "to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Uniform Controlled Substances Act (1970) (UCSA) § 401(a), 9 ULA 860, 886 (2007). The commentary to the UCSA explains that that section "designates the prohibited acts relating to unlawful manufacture and delivering of controlled substances, or possession with intent to manufacture or deliver such substances." *Id.* § 401 comment, 9 ULA at 887. The crimes described in Section 401(a) are differentiated according to what schedule applies, but all are punishable with imprisonment.

Section 401(c) of the UCSA separately addresses the offense of simple possession, making it unlawful "knowingly or intentionally to possess a controlled substance." *Id.* § 401(c), 9 ULA at 887. Simple possession is classified as a misdemeanor.

The commentary explains that difference in penalty structure: "The penalty structure is broken down according to the schedule of the substance involved and the particular unlawful act, since it is felt that trafficking offenses involving certain types of drugs constitute a greater danger to the public and are deserving of stiffer penalties." *Id.* § 401 comment, 9 ULA at 887. The commentary further explains that the simple possession subsection "has been drafted specifically to provide for a lesser penalty for simple possession than is provided for the trafficking and illicit manufacturing type offenses under subsections (a) and (b)." *Id.*

Oregon adopted the UCSA's prohibition on simple possession and, like the UCSA, treated that offense as a lesser crime than delivery and manufacture. Or Laws

1977, ch 745, § 15; ORS 475.752(3).[7] With regard to the more severe offenses, Oregon also generally adopted the UCSA's prohibition on manufacture and delivery by enacting ORS 475.752(1)—with a notable difference. The UCSA provides that "it is unlawful for any person to manufacture, deliver, *or possess with intent to manufacture or deliver*, a controlled substance." UCSA § 401(a), 9 ULA at 886 (emphasis added). ORS 475.752 provides only that "it is unlawful for any person to manufacture or deliver a controlled substance." Thus, unlike other UCSA jurisdictions, Oregon has not made "possess with intent" (to either deliver or manufacture) an enumerated crime. The parties draw different conclusions from that omission.

Defendant argues that the legislature's failure to enact the crime of possession with intent to deliver, when it otherwise adopted the UCSA's prohibition on delivery or manufacture of a controlled substance, is powerful contextual evidence that "attempted transfer" in ORS 475.005(8) requires something more than evidence that a person possessed a controlled substance and had the intent to transfer it. If the legislature had intended that the crime of delivery of a controlled substance could be established by such evidence alone, the legislature could have simply adopted UCSA § 401(a) in its entirety. Instead, the legislature omitted the phrase "possess with intent to manufacture or deliver," which, defendant argues, suggests the opposite intent.

The state resists that inference, arguing that there is no indication that the 1977 legislature was aware that the UCSA contained the "possess with intent" wording, so the legislature's failure to include that wording does not reflect a conscious choice to reject it. The state also points out that the bill's sponsors declared that the intent in adopting Oregon's Controlled Substances Act was to create "uniformity" with the UCSA, which treats "possession with intent" as a trafficking-level crime that is different and more serious

---

[7] The current version of ORS 475.752(3) was amended by Ballot Measure 110 (2020). Those amendments changed the penalty for "knowingly or intentionally" possessing a controlled substance from a misdemeanor to a violation. That change preserved the penalty structure that treats simple possession as a lesser crime than delivery or manufacture, and thus does not affect our analysis on that point.

than simple possession. That, the state argues, lends support to the view adopted in *Boyd*, namely, that the legislature intended for Oregon to criminalize possession with intent, but envisioned that it would be accomplished by having possession with intent treated as an "attempted transfer." *See Boyd*, 92 Or App at 53-54 (applying the principle of a "substantial step" drawn from the attempt statute, ORS 161.405). On that view, the "possess with intent" phrasing would have been superfluous.

We are not persuaded by the state's arguments, for several reasons. The parties have identified no legislative history, and we are aware of none, explaining why the 1977 legislation, Senate Bill (SB) 904, omitted the "possess with intent to manufacture or deliver" wording that appears in the UCSA. The state has cited legislative history reflecting that the legislature generally intended to adopt the uniform act. *See, e.g.*, Exhibit 3, Senate Committee on the Judiciary, SB 904, Apr 7, 1977 (fact sheet accompanying statement of Senator Stephen Kafoury) (explaining that SB 904 "proposes enactment of the UCSA" and is intended to create "uniformity" with federal law). But, as the state acknowledges, the same legislator also explained that SB 904 "incorporates many of the unique features of existing Oregon law and further modifies the UCSA based upon the collective judgment of the subcommittee and the bill's sponsors." *Id.*

It is also significant that, although SB 904 omitted the phrase "possess with intent," that phrase was included in the version of the bill that the legislature first considered four years earlier, in the 1973 session. House Bill (HB) 2003 (1973) (like the UCSA, making it unlawful "to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance"). The 1973 session adjourned without the bill becoming law, and the proposed bill in 1977 did not contain the "possess with intent" phrase. SB 904, Feb 24, 1977 (original bill). No legislative history from either the 1973 session or the 1977 session explains the removal of that phrase.

Ultimately, the lack of an affirmative explanation for why the legislature omitted a key phrase from the UCSA does not allow this court to infer that there is no significance

to the omission. *See Ashley*, 312 Or at 179 ("We generally give meaning to the difference between an Oregon statute and the statute or model code from which it was borrowed."). That would be true even without the evidence that the "possess with intent" wording was initially part of the 1973 bill. But the evolution of the legislation over multiple sessions in the 1970s[8] at least raises the possibility that the elimination of the "possess with intent" wording was one of the ways in which SB 904 "modifie[d] the UCSA based upon the collective judgment of the subcommittee and the bill's sponsors," as Senator Kafoury explained. Exhibit 3, Senate Committee on the Judiciary, SB 904, Apr 7, 1977. He was on the relevant committee in both the 1973 and the 1977 sessions. *See* Minutes, Special Joint Committee on Alcohol and Drugs, HB 2003, May 24, 1973 (listing members present); Minutes, Senate Committee on the Judiciary, SB 904, May 11, 1977, 6 (listing members in roll call vote). Thus, the evidence is at least as consistent, if not more, with the inference that the omission of the "possess with intent" phrase in the 1977 bill reflected a conscious policy decision not to treat that conduct on a par with delivery and manufacture.

The state's contrary interpretation of the text and legislative history requires us to conclude that the 1977 legislature intended to criminalize possession with intent to deliver just like the UCSA did, but that, instead of taking the straightforward path of copying the UCSA wording—as it did in other respects[9]—the legislature instead chose an unusual and indirect route: It made a material change to the operative UCSA provision and then assumed that the change would have no effect because subsequent readers would know to draw on the concept of an inchoate attempt *crime* from an entirely different part of the Oregon Criminal Code. All without explanation. We decline to draw that

---

[8] Senator Kafoury's testimony to the Senate Committee on the Judiciary in 1977 indicates that there was a continuity of effort across multiple sessions. Minutes, Senate Committee on the Judiciary, SB 904, Apr 7, 1977, 5 (statement of Senator Stephen Kafoury) ("The Uniform Controlled Substances Act was the product of the 1973 Session. The bill has been a long time coming and it still hasn't arrived. Much work has been done, it is still in need of work.").

[9] *E.g.*, Or Laws 1977, ch 745, § 1 (defining "agent," "dispense," and "production" as the UCSA did); *id.* § 8 (requiring registration using same terms as UCSA).

counter-intuitive inference in the absence of stronger evidence than the expressed intent to create "uniformity" with the UCSA. Such generalized expressions cannot control over the differences in the text that the legislature chose to enact.

The state's view of the context and history also does not fully account for the difference between the UCSA and the wording that the legislature enacted. As noted, the UCSA provides that "it is unlawful for any person to manufacture, deliver, *or possess with intent to manufacture or deliver*, a controlled substance." UCSA § 401, 9 ULA at 886 (emphasis added). The entire italicized phrase was omitted from ORS 475.752. On the state's account, the choice to omit possession with intent to *deliver* can be explained by the legislature's expectation that that conduct would be covered by the term "attempted transfer." But that does not explain why the legislature would also have omitted possession with intent to *manufacture*. The state does not suggest that "attempted transfer" could cover that conduct. If we were to accept the state's view, it would mean that the legislature had retained from the UCSA the policy of treating possession with intent to deliver as a completed crime equal in severity to delivery and manufacture, yet made the policy choice not to similarly treat possession with intent to manufacture—again, without explanation.

For the reasons we have explained, we reject the state's contention that conduct which would make a person liable for *attempting* the crime of delivering a controlled substance necessarily rises to the level of an "attempted transfer" for purposes of the *completed* crime of delivering a controlled substance. The text of ORS 475.005(8) suggests that an "attempted transfer" refers to conduct more directly connected to the act or acts by which a controlled substance changes possession. We understand the statute to mean that a person has engaged in an "attempted transfer" if the person has made some effort to undertake the *act or acts* of causing controlled substances to pass from one person to another. Steps preceding such an effort are insufficient to show an attempted transfer, even if they are consistent with a generalized intent to distribute the controlled substance in the future. That view of the text also best aligns

with the larger context and history of Oregon's Controlled Substances Act, which shows that the Oregon legislature declined to include the phrase from the UCSA that would have treated "possession with intent to deliver" as tantamount to delivery.

What the foregoing discussion should also make clear is that today's holding is limited. In light of the parties' arguments and the facts of this case, it is sufficient for us to say what an "attempted transfer" is not: It is not established by evidence that a person possessed a large quantity of a controlled substance and had a general intent to transfer it at an undetermined future time. Some additional evidence that the person made an effort to engage in the act of transferring is required. The question of what sort of additional evidence might be sufficient is one that we decline to address in the abstract, as we expect that courts will face it in a great variety of fact patterns. Transfers of controlled substances take varying forms, from hand-to-hand transactions on the street to large-scale distribution across significant distances, and what is necessary for an "attempted transfer" will depend on the circumstances. The parties debated at oral argument, for example, whether a person who carries a controlled substance into the streets and solicits buyers has engaged in an "attempted transfer." Defendant takes the position that even that activity is not sufficient, in the absence of evidence that a specific buyer was identified and that a physical transfer was attempted but interrupted. Because that set of facts is not before us, we express no view on it, other than to emphasize that our holding today does not go that far.

In this case, the record is legally insufficient to prove that defendant made an effort to transfer fentanyl. The record shows that defendant possessed a nonuser amount of fentanyl and that some of the fentanyl was packaged in a manner consistent with an intent to deliver it. What the record lacks is evidence that defendant had taken additional steps to engage in conduct that would cause the fentanyl to change hands. There is no evidence that potential buyers had been identified, specifically or generically, or that defendant had taken steps to identify or solicit buyers

or to otherwise engage in transferring conduct (such as transporting the fentanyl or communicating with others about a transfer).[10] Defendant was in jail in another county at the time, which also tends to cut against an inference that defendant was making an effort to transfer the fentanyl. (The state could have countered that fact with evidence that, before or during his incarceration, defendant had engaged in such an effort, but no such evidence was presented.) In short, the evidence, even viewed in the light most favorable to the state, permits no inference greater than that defendant possessed a quantity of fentanyl consistent with trafficking and had the intent to transfer it in the future. That is insufficient to show an "attempted transfer" for purposes of the completed crime of delivery. Accordingly, defendant's conviction for delivery must be reversed.

Having reversed the conviction for delivery, the Court of Appeals remanded the case for entry of a conviction for the lesser-included offense of attempted delivery of a controlled substance. That disposition raises two distinct questions: (1) whether the evidence is sufficient to support a conviction for the inchoate crime of attempted delivery, and (2) if so, whether this court should direct that the conviction be entered, as opposed to remanding for the trial court to consider in the first instance whether to convict defendant of that crime.[11]

As to the first question, we conclude that the evidence is sufficient to convict defendant of the inchoate crime of attempted delivery.

The crime of attempt has two elements: (1) intentional conduct that (2) constitutes a substantial step toward the commission of the crime. *See State v. Walters*, 311 Or 80, 84, 804 P2d 1164, *cert den*, 501 US 1209 (1991). Conduct is intentional when a person "acts with a conscious objective to

---

[10] We reiterate here that the state's theory was based on defendant having the fentanyl and having some of it packaged into smaller amounts. The state's theory was not based on the fact that the overdose victims accessed the fentanyl, and it did not rely on that fact at trial.

[11] Article VII (Amended), section 3, of the Oregon Constitution grants this court the authority to direct a different conviction to be entered if this court is "of [the] opinion that it can determine what judgment should have been entered in the court below."

cause the result or to engage in the conduct so described." ORS 161.085(7). A substantial step occurs when a person's conduct (1) advances the criminal purpose charged and (2) provides verification of the existence of that purpose. *State v. Kyger*, 369 Or 363, 371, 506 P3d 376, *adh'd to as modified on recons*, 369 Or 604, 509 P3d 112 (2022). We have distinguished a substantial step, which is a predicate for attempt liability, from "mere preparation," which is not sufficient. *Id.* at 370 ("[The substantial step test] draws a line between conduct that is 'mere preparation' for criminal activity (and is insufficient to create liability), and conduct that goes further.").

The legislative history surrounding the enactment of the inchoate attempt statute indicates that the legislature anticipated that, at least in some circumstances, possession of an item might, by itself, constitute a substantial step. The Commentary to the Criminal Code specifically provides examples of "acts which should not be held insufficient as a matter of law to constitute a substantial step," which include "possession of materials to be employed in the commission of the crime, [and possession of which could] serve no lawful purpose of the actor." Commentary § 54 at 51.

Defendant argues that the evidence shows nothing more than "mere preparation" for the crime of delivery, and that attempt liability requires the existence of an identified "transferee." We disagree. Defendant took perhaps the most consequential step necessary to traffic in illegal drugs, which is to acquire them. Defendant held enough fentanyl to supply in excess of 300,000 doses. We need not resolve whether possession of that quantity constitutes a substantial step by itself, because the state presented additional evidence of defendant's conduct that advanced and verified the existence of a criminal purpose—the fentanyl had been prepackaged for sale. Such conduct rises beyond the level of "mere preparation" and constitutes a substantial step toward committing the crime of delivery. Accordingly, the evidence is sufficient to convict defendant of the inchoate crime of attempt.

Moreover, we conclude that, under these circumstances, the trial court in effect *did* convict defendant of

attempted delivery, so it is unnecessary to remand for the trial court to consider in the first instance whether to convict defendant of that crime. The parties and the trial court proceeded from the understanding that *Boyd* controlled, and that liability for the crime of delivery could be established by a "substantial step" toward delivery. The trial court explained that "the issue is whether or not there's any under the *Boyd* *** case[], whether there's any sort of substantial step towards the *** attempt to delivery." The court then proceeded to explain that "possession of materials which can serve no lawful purpose of the actor under the circumstances is sufficient *** to constitute a substantial step." Finally, the court found that defendant's possession of multiple prepackaged bags of fentanyl constituted a substantial step. With that understanding of the record, we conclude that the trial court made all the requisite findings for defendant's conviction for inchoate attempt and that that is the conviction that the trial court would have entered but for *Boyd*, which allowed the conviction to be entered for the completed crime instead.[12]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[12] Defendant challenges the sufficiency of the evidence for attempt, but he does not argue that, if the evidence was sufficient, it is nevertheless necessary to allow the trial court to determine whether to enter that conviction.