No. 920        October 22, 2025        417

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACAUREE TARKEYCE WALKER,
aka Jacauree Tarkevce Walker,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR20976, 18CR26336; A182056 (Control), A182090

Shelley D. Russell, Judge.

Submitted September 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this consolidated criminal appeal, defendant challenges his second-degree murder conviction and the two first-degree assaults that merged with it.[1] In three assignments of error, he argues that the trial court erred when it denied his motions for judgement of acquittal (MJOAs) as to each of those three charges. We affirm.

*Murder MJOA.* In defendant's MJOA as to the murder charge, he argued that the evidence was insufficient to allow the jury to find beyond a reasonable doubt that he intended to cause the death of the victim. *See* ORS 163.115(1)(a) (requiring the state to prove that the defendant "intentionally" caused the death of another human being). On appeal, he acknowledges that, in the light most favorable to the state, the brutal nature of his assault on the victim would normally allow the jury to infer that he intended to kill the victim. But he argues that a video he filmed just after the assault conclusively establishes that he intended only to injure the victim, such that it would no longer be reasonable for the jury to infer from the assault itself that he intended to kill the victim. In that video, defendant tells the victim, "Don't you ever disrespect me again, little boy. Do you hear me? Ever again, bitch. You lucky this time ***." The state responds that defendant is not properly viewing that video in the light most favorable to the state and, viewed properly, the video does not foreclose the jury's ability to infer that defendant intended to kill the victim.

In reviewing the sufficiency of the evidence in a criminal case, "we view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hubbell*, 371 Or 340, 343, 537 P3d 503 (2023). The state argues that, in the greater context of this case, the jury could view the video as a self-serving recording that defendant intended to use to minimize his culpability or as a warning to *others* about what would happen if they ever disrespected defendant again. We agree that, in the light most favorable to the state, the video need

---

[1] Defendant's arguments on appeal target only Case No. A182056. He does not raise any challenges to the revocation of his probation in Case No. A182090.

not be viewed as an accurate, complete, or wholly faithful depiction of defendant's mental state when he assaulted the victim moments earlier. As such, the video did not foreclose a factfinder from reasonably inferring beyond a reasonable doubt that defendant intended to kill the victim.

*Assault MJOAs.* Next, defendant argues that the trial court erred in denying his MJOAs as to the first-degree assault charges, which required the state to prove, among other things, that defendant knew that his shoes were a "dangerous weapon."[2] *See* ORS 163.185(1)(a) (a person commits the crime when they "[i]ntentionally cause[] serious physical injury to another by means of a * * * dangerous weapon"). Defendant argues that there was legally insufficient evidence to prove that defendant knew that his shoes constituted a "dangerous weapon" because that is not something that a lay person would be expected to know—a point supported, in defendant's view, by the fact that the state presented extensive scientific evidence about the "strike effectiveness" of the shoes and requested a jury instruction that explained that shoes could be "dangerous weapons." The state responds that defendant owned and wore the shoes before using them to kill the victim, so the jury could infer that he was aware of their physical properties during the assault, whereas the jurors had never owned or worn that pair of shoes and thus needed expert evidence to gain that knowledge. The state argues that the jury instruction "served only to identify for the jury what object the state alleged was a dangerous weapon."

We agree with the state that, in the light most favorable to the state, the jurors could infer beyond a reasonable doubt that defendant was sufficiently familiar with the physical characteristics of the shoes to know that they would constitute "dangerous weapons" when used in the manner that defendant used them against the victim.

Affirmed.

---

[2] ORS 161.015(1) defines "dangerous weapon" to mean "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."